ANTONIO MARFISI, Plaintiff, *v.* WILSON & COMPANY, Defendant.*

City Court of Buffalo, February 23, 1911.

* See *post* p. 887.

*Edward R. O'Malley* and *Jeremiah J. Hurley*, for the plaintiff.

*Michael F. Dirnberge*, *Jr.*, and *Owen F. Nugsperger*, for the defendant.

HODSON, J. On the 3d day of December, 1909, the plaintiff pawned a gold watch with an Elgin movement, of the alleged value of twenty-five dollars, with the defendant, who is a pawnbroker in the city of Buffalo, N. Y., and obtained a loan thereon of five dollars, and, pursuant to such transaction, the defendant issued to the plaintiff a pawn ticket, whereby the defendant agreed to return such pledge upon the payment of the amount loaned, with interest, according to the ordinances of the city of Buffalo, which said ticket contained the statement that after four months the said pledge would be sold without notice and that the interest charged on the said loan would be ten per cent per month; at the same time the plaintiff delivered to the defendant a writing wherein he waived personal notice of any such sale, and stipulated that the sale of said pledge could be at public or private sale if unredeemed, according to the ordinances of the city of Buffalo relating to pawnbrokers. Said loan was not paid, and said pledge was not redeemed on the 6th day of May, 1910, on which date the defendant sold said watch for the sum of six dollars, less than the amount of said loan with accrued interest at the rate of ten per cent per month.

The plaintiff now brings this action against the defendant, claiming that the agreement for said loan and pledge was usurious and void because it provided for the payment of interest at the rate of ten per cent per month; and the plaintiff also claimed and now urges that the defendant had no right to sell such pledge after the expiration of the four months from the time the same was pledged, but should have kept the same for at least one year from said time, and cites sections 40 to 52 of the General Business Law, constituting a part of the Consolidated Laws of the State of New York, as the basis of such contention.

Everybody concedes that the defendant was well within its rights in contracting such loan, taking such pledge, charging such

interest and making such sale, providing subdivision (6) of section 17 of the charter of the city of Buffalo and section 9 of chapter 22 of the ordinances of the city of Buffalo were in effect and of force at the time said loan was made; but the very existence of said charter provision and ordinances is challenged in this case upon the ground, as the plaintiff's counsel argued, that they have been repealed by the general law above referred to.

This contention on the part of the plaintiff leads this court into a most interesting and important examination of the laws of the State of New York applicable to the city of Buffalo, because it will be seen that, although the amount involved in this case is small, yet the courts are now called upon, for the first time in over twenty years, to determine whether or not the city of Buffalo has proceeded rightfully in the matter of regulating the pawnbrokerage business within the city of Buffalo, and, indirectly, also, the legality or illegality of the various loans which have been made by the pawnbrokers. This is quite as serious a problem as it is to define the rule for the regulation of such business in the future, and this court is thus required to make a decision in this case and send it along to the upper courts for their review, to the end that intelligent and legal authority may be established on this subject for the guidance of everyone concerned.

In the year 1883 the Legislature of this State passed a law which is known as chapter 339, and the provisions of that chapter are the source of the General Business Law above referred to. That law expressly states that it applies only to cities having a population of 200,000 or more. At that time (1883) the city of Buffalo had a population of less than 200,000, but it is a matter of public record and common knowledge that its population has exceeded 200,000 for many years. Without citing any particular articles or section of that law, it may be briefly said that it provides in substance as follows: That no pawnbroker shall sell any pawn or pledge until the same shall have remained one year in his possession, and that all such sales shall be at public auction, and that no pawnbroker shall ask, demand or receive any greater rate of interest than three per centum per month or any fraction of a month, for the first six months, and two per centum per month for each succeeding month upon any loan not exceeding the sum of $100.

At the time of the passage of this act, which was made, as I have said, applicable to all cities in the State having 200,000 inhabitants, the charter of the city of Buffalo, which was a special act of the Legislature passed in the year 1870 (Laws of 1870, chap. 519), was in existence, and section 8 of title 3 of said charter provided, among other things: " The city shall have power by its com-

mon council from time to time, to enact ordinances: * * * To license and regulate * * * pawnbrokers and the business of pawnbrokerage."

No claim was ever made that such general law repealed the above section of the city charter, which is a special act, although during the period from 1883 down to the year 1891 the city of Buffalo had become possessed of more than 200,000 population, and had passed an ordinance pursuant to such charter provisions, regulating the business of pawnbrokerage, and the pawnbrokers in this city had conducted their business under the supervision of the city officials accordingly.

By chapter 105 of the Laws of 1891, which became a law March 27, 1891, and went into effect January 1, 1892, the Legislature gave to the city of Buffalo a revised charter, under which it is now conducting its business, and the provisions of the old charter, with some amplifications, were re-enacted so far as it related to the power of the common council to enact ordinances. Subdivision (6) of section 17 of title 2 of the present city charter provides: " The common council shall, from time to time, enact ordinances * * * to license and regulate * * * pawnbrokers and the business of pawnbrokerage, and to fix the rates to be charged by pawnbrokers in their business."

Pursuant to this chapter provision, the common council did enact chapter 20 of the ordinances of the city of Buffalo upon the subject of pawnbrokers, and therein defined the rights, limited the powers, fixed the rates and generally established a code of rules governing the licensing and the business of pawnbrokers within the city of Buffalo.

By section 9 of that chapter of the ordinances it is provided, in effect, that pawnbrokers may receive as interest upon a loan of from one dollar to ten dollars ten per cent per month, and by section 12 of the same chapter it is, in effect, provided that the pawnbroker may sell the pledge after the expiration of three months from the time limited for the payment of the loan.

From this statement of facts and law, therefore, we may summarize the rights and interests of the parties to this controversy as follows: If the provision of the charter and ordinances of the city of Buffalo apply to the transaction of the plaintiff and defendant concerning said loan, then the defendant should prevail and the plaintiff's complaint should be dismissed. But if the general State law above quoted applies to said transaction, then it is equally clear that the defendant has not complied with that law and should respond to the plaintiff for the value of the property of which he has been deprived. So, it will readily be seen that the crucial

question in this case is: " Do the provisions of the general law relating to pawnbrokers in cities having a population of 200,000 or more govern the pawnbrokerage business in the city of Buffalo, or do the provisions of the special law, which is the charter of the city of Buffalo, and the ordinances enacted pursuant to said charter, authorize the city authorities to license and regulate pawnbrokers and the business of pawnbrokerage, and fix the rates to be charged by pawnbrokers in their business with the city of Buffalo? "

The learned counsel for the plaintiff claims that immediately the city of Buffalo attained to a population of 200,000 the State law automatically applied thereto, and by implication repealed the provisions of the charter of the city of Buffalo, although nowhere in the act can be found any language which indicates that the Legislature intended such repeal; and I am of the opinion that the charter of the city of Buffalo, which is a special statute, must be repealed, if at all, by the express enactment of the Legislature; and there is no rule of statutory construction which has been more clearly stated and defined by the courts than the one which holds that special and local laws are not deemed repealed by general legislation unless the intent to do so is apparent. (*City of James-town* v. *Home Telephone Co.*, 125 App. Div. 1.)

Almost this precise question has been determined before in the city of Buffalo over a question as to whether or not a special act of the Legislature, like the charter of the city of Buffalo, is deemed repealed by a general law, and the court held in the case of *Buffalo Cemetery Assoc.* v. *City of Buffalo* (118 N. Y. 61) that a law applicable to the State generally, containing provisions with reference to taxes and assessments which were in conflict with the provisions of the charter of the city relating to such taxes and assessments, did not repeal the special statute by implication, and declared that this rule of construction, providing for particular cases or applicable to a particular locality, is not repealed by a statute general in its terms and application, unless the intention of the Legislature to repeal or alter the special law is manifest, although the terms of the general law would to a certainty, but for the special law, include the case or cases provided for. (*Buffalo Cemetery Assn.* v. *City of Buffalo*, 118 N. Y. 61.)

Nowhere in the General Business Law can be found a provision which repeals the section of the charter authorizing the common council of the city of Buffalo to supervise and regulate the business of pawnbrokers.

But, on this question of the intention of the Legislature to work such repeal by implication, the plaintiff's counsel argues that by

the terms of the act the city of Rochester is specifically exempted from its provisions, thereby showing that the Legislature intended to reach every other city in the State having the required population. However, it will be seen that this very point is met by the Court of Appeals in the decision just quoted, and the court goes on to say that no inference can be drawn from such exemption that the Legislature intended to repeal the local act.

But, what I deem to be of more significance in reference to the intention of the Legislature on this subject is the action of that body in granting to the city of Buffalo its revised charter, passed March 27, 1891, to take effect January 1, 1892, more than eight years after the General Business Law was put upon the statute book, and while it then existed.

For the purpose of argument, however, let us admit that the general law did work a repeal by implication of the provision of the charter of 1870, and the Legislature did, by that act, take away from the city the right to regulate the business of pawnbrokerage, and that such general law did automatically apply to the city of Buffalo as soon as a population of 200,000 was attained; then, by the same process of reasoning, what shall be said of the enactment of the special statute of 1891, known as the Revised City Charter, wherein the Legislature restored to the common council of the city the power " to regulate the business of pawnbrokerage," and then added a specific duty, which was not contained in the charter of 1870, " to fix the rates to be charged by pawnbrokers in their business." (Revised Charter of Buffalo, § 17, subd. 6, Laws of 1891, chap. 105.) And by the same enactment it is provided that " all acts or parts of acts inconsistent with this act are hereby repealed." (Id. § 507.)

It, therefore, seems to me that the Legislature never intended to invade the rights of the city of Buffalo to regulate and control the pawnbrokerage business within its corporate limits. But, even if it did, either by implication or inadvertence, take away the power of the common council as contained in the charter of 1870, still that same power — and more — was returned to the common council by the charter of 1891, and the provisions of the general law immediately became inoperative as to the city of Buffalo, for it cannot be reasonably maintained that the Legislature intended that the general law, which fixes the rate of interest at three per cent per month and limits the period of holding the pledge to one year, was to apply to Buffalo, while the same body plainly delegated to the common council the power and duty to fix such rate and limit such period.

In accordance with the above views, I find and determine:

*First.* That the defendant herein is a pawnbroker in the city of Buffalo and was at the time of the transactions with the plaintiff duly licensed as such pursuant to the charter and ordinances of the city of Buffalo.

*Second.* That the contract between the plaintiff and defendant for the pledge of the plaintiff's watch and the loan by the defendant of five dollars at the rate of ten per cent per month, for six months, was regular and lawful and in accordance with the said ordinances of the city of Buffalo.

*Third.* That the transaction was in no wise usurious or unlawful.

*Fourth.* That subdivision (6) of section 17 of chapter 105 of the Laws of 1891, being the Revised Charter of the City of Buffalo, and chapter 20 of the ordinances of the city of Buffalo, governing the licensing and regulation of pawnbrokers and the business of pawnbrokerage, and fixing the rates to be charged by pawnbrokers in their business, is the law governing pawnbrokers and their business in the city of Buffalo, N. Y., and that chapter 339 of the Laws of 1883, now constituting a part of the General Business Law of the State of New York, has no application nor control over pawnbrokers and their business within the city of Buffalo, N. Y.

*Fifth.* That chapter 339 of the Laws of 1883, constituting a part of the General Business Law of the State of New York, do not and have not repealed any provisions of the charter of the city of Buffalo herein referred to.

*Sixth.* The defendant is entitled to prevail on the issues presented in this case, and I direct that the plaintiff's complaint be dismissed on the merits, with costs.