GEORGE C. RILEY, Plaintiff, *v.* THE PRUDENTIAL SOCIETY, INC., Defendant.

Supreme Court, Erie County, July 25, 1939.

*George C. Riley,* in person, for the plaintiff.

*Desbecker, Fisk, Deckop & Conners* [*Joseph E. Conners* of counsel], for the defendant.

*James O. Moore, amicus curiæ.*

*Jacob Jacobson,* for the Pawnbrokers' Association, appearing as *amicus curiæ.*

HARRIS, J. This suit, commenced in February, 1938, is one in conversion. It was tried before the court and a jury on March 9 and 10, 1939. By stipulation certain specific questions of fact were submitted to the jury by the court with the understanding that on the return of the verdict of the jury on these questions, the jury was to be discharged and the court was to pass on the questions of law involved and direct a verdict on the court's decision of such questions of law as if the jury had been present at the time of such direction of verdict.

On trial before the jury the proof was substantially as follows: The plaintiff is an attorney and counselor at law admitted to practice in this State with offices for many years in the city of Buffalo; for some twenty years or more the defendant has been a pawnbroker licensed pursuant to the ordinances of the city of Buffalo and doing business under such license in such city. In December, 1932, a loan was obtained from the defendant in the name of J. B. Smith and in the amount of fifty dollars to be repaid in eight months with interest at the rate of three per cent per month. As security

for such loan there was pledged a platinum bar pin. At the time that such loan was made the pledgor received from the defendant a pawn ticket or memorandum signed by the defendant and to it he signed the name of J. B. Smith. Such pawn ticket contained a provision that payment on account of charges would operate to extend the nine months therein fixed as a period for redemption by the number of months for which the charges were paid. On January 5, 1933, there was paid to the defendant on such loan, interest which extended the loan to December 20, 1933. No further charges have been paid. There was mailed to J. B. Smith at the address given at the time of pawning a notice that the defendant intended to sell the pin. Sale was made at public auction of the article among other pieces of jewelry which sale was made under a notice describing the articles to be sold as " diamonds, watches, bracelets, rings and other miscellaneous jewelry " which notice was published in the Buffalo *Evening News* and which notice was signed " Prudential Loan Society, Inc."

In December, 1937, the plaintiff appeared at the office of the defendant, made a claim that he was the owner of the pin, stated that he had pawned the same in a fictitious name and demanded the return of the pin. His demand was refused and this action was begun. On trial the plaintiff testified that he was the owner of the pin and that it had a value of $400 and that he had pledged the same for his own benefit. Put on his proof he was able to establish to the satisfaction of the jury that he was the owner of the pin, had made the pledge for his own benefit and that its value was $400. It is on these facts that the case is now under consideration.

The claim of conversion by the plaintiff is based on his contention that the city ordinances of Buffalo in reference to pawn-broking establishments are invalid and that a sale of an unredeemed pawn under the provisions of such ordinances is illegal. He claims that in making such pledge it could only have been made under the provisions of the General Business Law of the State of New York contained in article 5 of such General Business Law. The pertinent provisions of such law, so far as the case at bar is concerned, relate to the amount of interest to be charged on a pawn (§ 46) and the method of noticing the sale of unredeemed articles (§ 49). If sections 46 and 49 of the General Business Law apply to the pawn in question, then the sale of the pin by the defendant was a conversion and made the defendant subject to this action by the plaintiff. At the time of the transaction of the pawning of the pin, there was in effect in the city of Buffalo certain ordinances in reference to pawnbroking establishments which ordinances

permitted the charging of five per cent a month on pledges and which permitted sales of unredeemed articles in the manner in which the article in question was sold. Such ordinances were adopted in accordance with the permission contained in the City Charter of Buffalo. The history of State legislation in reference to the pertinent provisions of the City Charter of Buffalo and of the General Business Law, article 5, is as follows: In 1853 the State gave to the city of Buffalo a charter which included, among other provisions, the right to enact ordinances to license pawnbrokers and to regulate their business. Under this charter of 1853 suitable ordinances were enacted in 1864. Such charter of 1853 was succeeded by a new one — that of 1870 — which again provided for the enactment of ordinances by the common council of the city to license and regulate pawnbrokers and their business. In 1883 the Legislature enacted chapter 339 of the State laws (now article 5 of the General Business Law). Such chapter provided for the regulation of pawnbrokers in cities having a population of 200,000 or more. At the time of its enactment the city of Buffalo had not reached that number of population. Subsequently it did reach such population, and at the time of the transaction between the plaintiff and defendant its population was hundreds of thousands more than the 200,000 provided for in chapter 339 of the Laws of 1883. By chapter 105 of the Laws of 1891 a new charter was granted to the city of Buffalo which new charter not only contained the authority to enact ordinances regulating the pawnbroking business but further provided for the enactment of ordinances to fix the rates to be charged by pawnbrokers in their business. In 1909 by chapter 25 of the statutory laws, the Legislature repealed chapter 339 of the Laws of 1883 by re-enacting the substance of that chapter in the General Business Law (Laws of 1909, chap. 25). In 1914 another new charter was granted to the city of Buffalo and such new charter continued and re-enacted the provisions permitting the common council to enact ordinances to govern the business of pawnbroking and to fix the rates of interest. In 1927 pursuant to the City Home Rule Law, there was enacted the present charter of the city of Buffalo and this present charter again continued the provisions which were in the preceding charters above mentioned, to wit, that " the council shall have power to enact ordinances: * * * to license and regulate pawnbrokers and the business of pawnbrokerage and to fix the rates to be charged in said business." (City Charter of Buffalo [1927], § 33.) From the time of the enactment of the charter of 1853 continuously to the present day, by ordinances, the city of Buffalo has regulated pawnbrokers and their business and has established the manner of the sale of unredeemed

pledges and since the enactment of the charter of 1891 has fixed the rates of interest. Despite successive changes of charter the ordinances have remained in substantially the same form since their original enactment. The plaintiff claims that the ordinances enacted under the charters to which reference is made above, should have been, since 1883, limited by and in accordance with the provisions of the Laws of 1883, chapter 339, and the subsequently enacted provisions of article 5 of the General Business Law. The contention of the defendant is that the Legislature never intended that chapter 339 of the Laws of 1883, as subsequently re-enacted in article 5 of the General Business Law, should apply to the city of Buffalo. On the decision of these contentions of the plaintiff and defendant rests the disposition of the merits of this lawsuit.

This court is of the opinion that the Legislature in granting the charter of 1853 to the city of Buffalo, intended to confer on the city of Buffalo the exclusive right to control the pawnbroking business in the city and that it did not, by enactment of chapter 339 of the Laws of 1883 and the subsequent enactment of article 5 of the General Business Law, intend to control the charter provisions by such chapter 339 and article 5. This court holds that the provisions of chapter 339 of the Laws of 1883 and of such article 5 of the General Business Law were to apply to cities which had not been given specifically the power in their charters to regulate pawnbroking business and the rates of interest. If this had not been the intention of the Legislature when it enacted chapter 339 and article 5, it could have placed in such statutes a provision that cities which had already been granted charters allowing such cities to control the pawnbroking business should be limited in their control of the business by the provisions of such chapter 339 and subsequently by the provisions of such article 5. This the Legislature did not do and, therefore, such charter provisions are not limited by chapter 339 or by its successor, article 5 of the General Business Law.

This being the conclusion of the court, it is necessary to hold that the ordinances enacted by virtue of the charter provisions of the city of Buffalo are valid and that loans made by businesses licensed and conducted under such ordinances are subject as to rate of interest and method of sale of unredeemed articles to the provisions of such ordinances.

The plaintiff also attacks the sale on the ground of erroneous naming of the seller in the advertisement in the Buffalo *Evening News*. In reference to this attack, I am of the opinion that the object of the provision requiring the publication of notice was to provide for as large a number of bidders as possible and that the

error in naming the seller was immaterial so long as the advertisement was properly published.

The defendant is entitled to a direction of verdict of no cause of action.

In its conclusions herein the court has found of great value the following decisions: *Marfisi* v. *Wilson & Co.* (166 Misc. 881; S. C., Supreme Court, Special Term, Erie County, Id. 887); *People ex rel. Wilson* v. *Fuhrmann* (Id. 888).