PHILIP C. STONE, Appellant, *v.* HYMAN JACOBSON, Engaged in Business under the Assumed Name and Style of WILSON BROS., Respondent.

Fourth Department, December 27, 1939.

*George C. Riley,* for the appellant.

*Jacob Jacobson* [*Edward H. Wolkind* of counsel], for the respondent.

*Joseph E. Conners,* for the Prudential Society, Inc., as *amicus curiæ.*

SEARS, P. J. The sole question involved in this appeal relates to the validity and effect of certain ordinances of the city of Buffalo relating to the rates of interest chargeable in Buffalo by licensed pawnbrokers.

The various charters of the city of Buffalo from 1853 to the present time have all granted to the governing body of the municipality power to enact ordinances " to license and regulate pawnbrokers and the business of pawnbrokerage." (Laws of 1853, chap. 230; Laws of 1870, chap. 519, tit. III, § 8, subd. 5; Laws of

1891, chap. 105, tit. II, § 17, subd. [6]; Laws of 1914, chap. 217, tit. II, § 13, subd. [4]; Buffalo Local Laws of 1927, Local Law No. 4 § 33, subd. [3].) In all the charters, beginning with the charter of 1891 and continuing to the present time, power is specifically granted to the governing body of the city to fix the rates to be charged by pawnbrokers in their business. The ordinances of the city of Buffalo, in effect at the time of the action, provide as follows: " No pawnbroker shall demand, take or receive any greater interest than the following rates of interest per month: Ten per cent. on sums from $1 to $10; 6 per cent. on sums from $10 to $25; 5 per cent. on sums from $25 to $50; 2½ per cent. on sums from $50 to $75; 1½ per cent. on all sums over $75; and at and after that rate for a greater or less period upon any loans made in pursuance of the business of pawnbrokerage, which said charges or interest shall be taken as a full satisfaction for all interest due and charges for ware-room and other charges, except charges for insurance where parties wish to insure their pledges. Any pawnbroker who shall demand or receive a greater rate of interest than the foregoing sum shall forfeit and pay for the use of said City $25 for each and every offense."

In 1883 a statute (Laws of 1883, chap. 339) was enacted fixing the rates to be charged by pawnbrokers in municipalities having a population of 200,000 or more, as follows:

" § 7. No pawnbroker shall ask, demand or receive any greater rate of interest than three per cent per month, or any fraction of a month, for the first six months, and two per cent per month for each succeeding month, upon any loan not exceeding the sum of one hundred dollars, or than two per cent per month for the first six months and one per cent per month for each succeeding month on any loan exceeding the sum of one hundred dollars."

The city of Buffalo did not attain a population of 200,000 until 1890, but has had a population in excess of 200,000 at all times since that year. Thus it appears that the year after the city of Buffalo attained a population sufficient to make the act of 1883 concerning pawnbrokers applicable to this municipality, the Legislature enacted a new charter for the first time expressly delegating to the city council power to fix the rates chargeable by pawnbrokers.

During the year 1936 the plaintiff had two transactions with the defendant, who is a licensed pawnbroker in the city of Buffalo. In the first of these transactions the plaintiff secured a loan of ten dollars, the agreed charge to be one dollar per month, a pledge being made to secure the loan. In the second transaction the loan was twenty-five dollars and the agreed charge was a dollar and ninety

cents per month, a pledge being made to secure the loan. On March 1, 1938, the plaintiff, claiming that the charges were violative of section 7 of chapter 339 of the Laws of 1883, tendered the pawn tickets to the defendant and demanded the return of the articles pledged. (General Business Law, § 44.) The defendant refused to return the articles, claiming the rate charged to be authorized by the ordinances. The plaintiff alleges in his complaint the conversion of the articles by the defendant but waives the tort and founds his action on contract and demands the value of the articles.

We are thus called upon to determine whether under the charter provisions referred to, the city had power to fix interest to be charged by pawnbrokers at any rate whatever, or whether pawnbrokers in the city of Buffalo since it attained a population of 200,000 by reason of the provisions of the statute of 1883 may not be authorized by the city authorities to charge a higher rate than is established as the maximum fixed in the statute itself.

There can be no question as to the power of the city authorities to fix pawnbrokers' interest charges before the time that the city attained a population of 200,000. At the time of the enactment of the statute of 1883, only two cities in the State had a population of 200,000, or more, namely, New York and Brooklyn. And the act of 1883 as to rates became at once applicable to those cities.

In the city of Buffalo, however, the situation was different. When in 1890 the city attained a population of 200,000, the general law relating to pawnbrokers in such cities may have become applicable to the city of Buffalo, as it had previously been applicable to the cities of New York and Brooklyn. However, in 1891, a new revised charter for the city of Buffalo was granted by the Legislature, and, as stated above, there was then first included in the charter specific power to the city authorities to fix the rates chargeable by pawnbrokers. This power was plenary in form and, as was stated by Chief Judge POUND (then a justice of the Supreme Court) in *Marfisi* v. *Wilson & Co.* (166 Misc. 887), " unquestionably superseded the general provisions of chapter 339 of the Laws of 1883, regulating the business of pawnbrokers in cities of upwards of 200,000 inhabitants, and gave to the common council the power to license and regulate pawnbrokers, and fix their rates." Since the granting of the charter in 1891, under the power contained therein and in succeeding charters, city ordinances authorizing a charge such as was made by the defendant in this case have been in force.

We reach the conclusion, therefore, that the ordinances are valid. (*Marfisi* v. *Wilson & Co.*, 166 Misc. 881; affd., Id. 887; *People ex rel. Wilson* v. *Fuhrmann*, Id. 888. But cf. 1903 Op. Atty.-Gen. 455.)

The judgment and order should be affirmed, with costs.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and TAYLOR, JJ.

Judgment and order affirmed, with costs.